UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

DEER STAGS, INC.,

         Plaintiff,

   -against-

CASUAL MALE RETAIL GROUP, INC.,
CMRG APPAREL, LLC, f/k/a DESIGNS
APPAREL, INC.,
DESIGNS APPAREL, INC.,
CASUAL MALE RBT, LLC,
CAUSAL MALE RBT (U.K.), LLC,
CASUAL MALE CANADA INC.,
CASUAL MALE STORE, LLC,
CASUAL MALE RETAIL STORE, LLC and
CASUAL MALE DIRECT, LLC,

         Defendants.

-------------------------------------------------------------x

*08 CIV 3786 (LAK)(MHD)*

***ANSWER, DEFENSES***
***AND COUNTERCLAIMS***

**Jury Trial Demanded**

### <u>*ANSWER*</u>

  Defendants Casual Male Retail Group, Inc., CMRG Apparel, LLC,

Designs Apparel, Inc., Casual Male RBT, LLC, Casual Male RBT (U.K.), LLC, Casual

Male Canada Inc., Casual Male Store, LLC, Casual Mail Retail Store, LLC and Casual

Male Direct, LLC (collectively, "Defendants"), for their Answer, Affirmative Defenses

and Counterclaims in response to the Amended Complaint, dated April 30, 2008 (the

"Complaint"), state and allege as follows:

### *As to the Preliminary Statement*

1.      Defendants deny the allegations set forth in Paragraph 1 of the Complaint.

2.      Defendants deny the allegations set forth in Paragraph 2 of the Complaint, but admit that plaintiff's claims purport to be based on the documents referenced therein and that defendant Designs Apparel, Inc. is now known as CMRG Apparel, LLC.  For convenience, defendants Designs Apparel, Inc. and CMRG Apparel, LLC will be referred to below collectively as "CMRG."

### *As to the Deer Stags, Inc. Allegations*

3.      Defendants lack information or belief sufficient to admit or deny the allegations set forth in Paragraphs 3 and 4 of the Complaint.

### *As to the Defendants Allegations*

4.      Defendants admit the allegations set forth in Paragraphs 5 through 20 of the Complaint.

5.      Defendants deny the allegations set forth in Paragraph 21 of the Complaint.

### *As to the Cross Corporate Guaranty Allegations*

6.      Defendants lack information or belief sufficient to admit or deny the allegations set forth in Paragraph 22 of the Complaint.

7.      Defendants admit the allegations set forth in Paragraph 23 of the Complaint, and respectfully refer the Court to the Guaranty referred to therein for a full and complete statement of its contents.

8.     Defendants deny the allegations set forth in Paragraph 24 of the Complaint, aver the Guaranty is not relevant to any issue in this matter and respectfully refer the Court to the Guaranty referred to therein for a full and complete statement of its contents, terms and conditions.

9.     Defendants deny the allegations set forth in Paragraph 25 of the Complaint, and respectfully refer the Court to the Guaranty referred to therein for a full and complete statement of its contents, terms and conditions.

10.     Defendants deny the allegations set forth in Paragraph 26 of the Complaint, and respectfully refer the Court to the Guaranty referred to therein for a full and complete statement of its contents, terms and conditions.

11.     Defendants deny the allegations set forth in Paragraph 27 of the Complaint.

12.     Defendants deny the allegations set forth in Paragraph 28 of the Complaint.

13.     Defendants lack information or belief sufficient to admit or deny the allegations set forth in Paragraph 29 of the Complaint and respectfully refer the Court to the Guaranty referred to therein to the extent it is alleged that the obligations and invoices at issue in this matter are under the Guaranty.

14.     Defendants deny the allegations set forth in Paragraph 30 of the Complaint.

### As to the Jurisdiction and Venue Allegations

15.     Defendants admit the allegations set forth in Paragraphs 31 through 33 of the Complaint, as applicable to all claims, setoffs and counterclaims herein.

16.     Defendants deny the allegations set forth in Paragraph 34 of the Complaint, except admit that certain events alleged in the Complaint occurred in this district and certain events occurred in the District of Massachusetts.

### As to the First Claim For Relief

17.     In response to the allegations set forth in Paragraph 35 of the Complaint, Defendants repeat and reallege each and every allegation set forth above as if set forth fully herein.

18.     Defendants deny the allegations set forth in Paragraph 36 of the Complaint, except admit that CMRG placed certain orders with Deer Stags, Inc. ("Deer Stags") for certain articles of footwear made pursuant to certain specifications, subject to certain warranties and at certain agreed prices.

19.     Defendants deny the allegations set forth in Paragraph 37 of the Complaint, except admit that Deer Stags accepted certain purchase orders from CMRG.

20.     Defendants deny the allegations set forth in Paragraph 38 of the Complaint.

21.     Defendants deny the allegations set forth in Paragraph 39 of the Complaint, and aver that CMRG initially took delivery of all goods under the mistaken belief that all such goods in fact conformed to specifications and/or warranties, when certain goods were in fact non-conforming and/or in breach of warranty and the nature of the non-conformities and/or breaches was not immediately apparent. Upon discovery of the non-conformity and/or breaches, CMRG promptly revoked acceptance of all non-conforming and/or non-warranted goods.

4

22.     Defendants deny the allegations set forth in Paragraph 40 of the Complaint, except admit that the Invoices annexed to the Complaint as Exhibit B were in fact issued to CMRG on or about the dates indicated.

23.     Defendants admit the allegations set forth in Paragraph 41 of the Complaint, but aver that no such Invoices can or should be paid unless and until Defendants' defenses, setoffs and/or counterclaims are adjudicated.

24.     Defendants deny the allegations set forth in Paragraph 42 of the Complaint.

25.     Defendants deny the allegations set forth in Paragraph 43 of the Complaint.

26.     Defendants deny the allegations set forth in Paragraph 44 of the Complaint.

### *As to the Second Claim For Relief*

27.     In response to the allegations set forth in Paragraph 45 of the Complaint, Defendants repeat and reallege each and every allegation set forth above as if set forth fully herein.

28.     Defendants deny the allegations set forth in Paragraph 46 of the Complaint.

29.     Defendants deny the allegations set forth in Paragraph 47 of the Complaint.

### *As to the Third Claim For Relief*

30.     In response to the allegations set forth in Paragraph 48 of the Complaint, Defendants repeat and reallege each and every allegation set forth above as if set forth fully herein.

31.     Defendants admit the allegations set forth in Paragraph 49 of the Complaint, but aver that no such invoices can or should be paid unless and until Defendants' defenses, setoffs and/or counterclaims are adjudicated.

32.     Defendants deny the allegations set forth in Paragraph 50 of the Complaint.

### *As to the Fourth Claim For Relief*

33.     In response to the allegations set forth in Paragraph 51 of the Complaint, Defendants repeat and reallege each and every allegation set forth above as if set forth fully herein.

34.     Defendants deny the allegations set forth in Paragraph 52 of the Complaint.

35.     Defendants deny the allegations set forth in Paragraph 53 of the Complaint.

36.     Defendants deny the allegations set forth in Paragraph 54 of the Complaint, and aver that CMRG initially took delivery of all goods under the mistaken belief that all such goods in fact conformed to specifications and/or warranties, when certain goods were in fact non-conforming and/or in breach of warranty and the nature of the non-conformities and/or breaches was not immediately apparent.  Upon discovery of

the non-conformity and/or breaches, CMRG promptly revoked acceptance of all non-conforming and/or non-warranted goods.

37.     Defendants deny the allegations set forth in Paragraph 55 of the Complaint.

38.     Defendants deny the allegations set forth in Paragraph 56 of the Complaint.

39.     Defendants deny the allegations set forth in Paragraph 57 of the Complaint.

40.     Defendants deny the allegations set forth in Paragraph 58 of the Complaint.

### As to the Fifth Claim For Relief

41.     In response to the allegations set forth in Paragraph 59 of the Complaint, Defendants repeat and reallege each and every allegation set forth above as if set forth fully herein.

42.     Defendants deny the allegations set forth in Paragraph 60 of the Complaint, except admit that CMRG placed certain orders with Deer Stags for certain articles of footwear made pursuant to certain specifications, subject to certain warranties and at certain agreed prices.

43.     Defendants deny the allegations set forth in Paragraph 61 of the Complaint, except admit that Deer Stags accepted certain orders for goods placed by CMRG.

44.     Defendants deny the allegations set forth in Paragraph 62 of the Complaint.

45.     Defendants deny the allegations set forth in Paragraph 63 of the Complaint.

46.     Defendants deny the allegations set forth in Paragraph 64 of the Complaint.

47.     Defendants deny the allegations set forth in Paragraph 65 of the Complaint.

48.     Defendants deny the allegations set forth in Paragraph 66 of the Complaint.

49.     Defendants deny the allegations set forth in Paragraph 67 of the Complaint.

50.     Defendants deny the allegations set forth in Paragraph 68 of the Complaint.

51.     Defendants deny the allegations set forth in Paragraph 69 of the Complaint.

52.     Defendants deny the allegations set forth in Paragraph 70 of the Complaint.

### *As to the Sixth Claim For Relief*

53.     In response to the allegations set forth in Paragraph 71 of the Complaint, Defendants repeat and reallege each and every allegation set forth above as if set forth fully herein.

54.     Defendants deny the allegations set forth in Paragraph 72 of the Complaint.

55.    Defendants deny the allegations set forth in Paragraph 73 of the Complaint.

56.    Defendants deny the allegations set forth in Paragraph 74 of the Complaint.

57.    Defendants deny the allegations set forth in Paragraph 75 of the Complaint.

### As to the Seventh Claim For Relief

58.    In response to the allegations set forth in Paragraph 76 of the Complaint, Defendants repeat and reallege each and every allegation set forth above as if set forth fully herein.

59.    Defendants deny the allegations set forth in Paragraph 77 of the Complaint, and respectfully refer the Court to the Guaranty referred to therein for a full and complete statement of its contents, terms and conditions.

60.    Defendants deny the allegations set forth in Paragraph 78 of the Complaint, and respectfully refer the Court to the Guaranty referred to therein for a full and complete statement of its contents, terms and conditions.

61.    Defendants deny the allegations set forth in Paragraph 79 of the Complaint.

62.    Defendants deny the allegations set forth in Paragraph 80 of the Complaint.

### *AFFIRMATIVE DEFENSES*

1.      This Court lacks personal jurisdiction over certain of the defendants.

2.      The Complaint fails to state a claim upon which relief may be granted.

3.      Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

4.      Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

5.      Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

6.      Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

7.      Plaintiff's claims are barred, in whole or in part, due to the failure of consideration.

8.      Plaintiff's claims are barred, in whole or in part, as result of its own breaches of contract and failures of performance.

9.      Plaintiff's claims are barred, in whole or in part, due to illegality.

10.     Plaintiff's claims under the Corporate Guaranty are barred, in whole or in part, for lack of standing.

11.     Plaintiff's claims under the Corporate Guaranty are barred, in whole or in part, by the failure to join all necessary parties.

## *SETOFFS/COUNTERCLAIMS*

Setoff and Counterclaim-plaintiff CMRG, as and for its setoffs and counterclaims against Deer Stags, hereby alleges as follows:

### *Facts Common To All Set Offs/Counterclaims*

1.     CMRG was at all relevant times the purchasing entity for the Casual Male group of entities that own and operate the "Casual Male" national retail operation (collectively referred to herein as "Casual Male"), with its principal place of business located in Canton, Massachusetts.

2.     All of CMRG's product buyers, including its footwear buyers and all others involved in the process of ordering and managing the sale of footwear through Casual Male, are headquartered in CMRG's Canton, Massachusetts executive offices.

3.     At all relevant times, Casual Male has been extremely careful to cultivate and manage its brand and retail reputation, and thus has had the utmost concern regarding the quality of products (including footwear) offered to its customers in its retail stores, in its catalogs and on its merchandise website.

### **Casual Male Starts to Sell Deer Stag Genuine Leather Shoes**

4.     In or about 2001, CMRG started to purchase the "Guild" style dress shoe from Deer Stags for sale by Casual Male through its retail operations, by catalog and on its merchandise website.

5.     At the time the Deer Stags relationship with Casual Male opened, Deer Stags represented to CMRG that the Guild shoe was made with a "genuine leather upper," i.e., the main body of the shoe above the sole, and provided leather samples to CMRG accordingly.

6.    At the time, on information and belief, Deer Stags sourced the shoes from production facilities or factories located in Brazil.

7.    From 2002 through 2006, CMRG ordered substantial quantities of the Guild shoe for sale to its customers as "genuine leather." As the relationship progressed, and Casual Males' customers reacted positively to the Guild shoe, CMRG began to order additional styles of dress and casual shoes from Deer Stags. By the end of 2006, CMRG was regularly ordering seventeen different styles of Deer Stag dress and casual shoes for sale by Casual Male.

8.    At all times, at its offices in Canton, Massachusetts and at semi-annual shoe shows, CMRG made it clear that it was only interested in dress and casual shoes with "genuine leather uppers." Given its concerns for its brand and retail reputation, Casual Male would not and could not sell shoes in this category with anything less than "genuine leather uppers."

9.    Over the course of their regular interaction over purchase orders and deliveries of Deer Stags products, Deer Stags consistently warranted to CMRG that each of the seventeen Deer Stags styles of shoe it was selling and delivering to CMRG were in fact made with "genuine leather uppers." The Deer Stags warranties were based on at least the following:

a)    Deer Stags consistently described its products as "genuine leather," or used descriptions that did not contradict CMRG's expectations that the products were made with "genuine leather" uppers;

b)    CMRG catalog and web purchase orders specified leather upper fabric;

c)     Deer Stags consistently charged prices consistent with products made with "genuine leather" uppers;

d)     Deer Stags tendered various samples CMRG in Massachusetts that were made with "genuine leather uppers;"

e)     Deer Stags products were delivered to CMRG in Massachusetts in packaging that expressly represented that the products were "leather;" and,

f)     Deer Stags products bore "hang tags" further representing that all such products were "leather."

10.     All such indications were consistent with industry practice and custom for the production and delivery of "genuine leather" shoes and reasonably led CMRG to believe that it was in fact receiving shoes made with "genuine leather uppers."

11.     In fact, CMRG believes that all Deer Stags shoes produced for and delivered to CMRG in Massachusetts for the first several years of the relationship were made with "genuine leather" uppers, consistent with all representations, expectations and warranties.

**Deer Stags Quietly Starts To Deliver Inferior, Plastic Shoes**

12.     In or about 2006, however, on information and belief, Deer Stags moved its production of certain of its styles of shoes being ordered by and delivered to CMRG from Brazil to a factory or factories in China.

13.     On further information and belief, Deer Stags moved production of these styles to China in order to lower the cost of production.

14.     On further information and belief, starting in or about early 2006, as a result of the change in production facilities, Deer Stags changed the quality of

materials used in the production of certain styles. More specifically, without buyer approval, Deer Stags started knowingly ordering from its factories and delivering to CMRG in Massachusetts the Guild shoe now made with uppers consisting of "polynap" or a polyurethane product. In short, plastic, not genuine leather.

15.    On information and belief, Deer Stag intentionally specified "polynap" uppers to its factories in China because "polynap" is a less expensive material that is manufactured out of synthetic substances to look like genuine leather, but it does not have the same properties as leather and is understood in the industry to be an inferior material for quality footwear.

16.    While Deer Stags did indicate to CMRG that it may be moving its production of certain shoes to China as a cost measure, at no time did Deer Stags advise CMRG or anyone else at Casual Male of any change in shoe material. In fact, on information and belief, Deer Stags intentionally sought to obscure the fact that it was changing certain styles to a synthetic material.

17.    As CMRG started ordering additional styles of casual and dress shoes with the continued expectation and understanding that it would be receiving all such styles with genuine leather uppers, Deer Stags knowingly ordered from its new factories in China for delivery to CMRG in Massachusetts the additional styles (Paolo, Suitor, Sanderson and Laval) with "polynap," i.e. polyurethane or plastic, for delivery to CMRG.

18.    Notwithstanding Deer Stag's production changes, all oral discussions between CMRG buyers and Deer Stags continued to be based on the premise that all Deer Stags shoes in the dress and casual shoe category being delivered to CMRG

14

were in fact made with "genuine leather" uppers as had always been the case with the Guild style.

19.    Deer Stag continued to charge the same prices it had charged for "genuine leather" for the Guild style and comparable prices (i.e., prices one would expect for genuine leather) for the additional and now plastic styles.

20.    Deer Stags continued to provide samples of additional styles to CMRG in Massachusetts made with leather.

21.    CMRG's catalog and web purchase orders continued to specify the leather upper fabric content.

22.    The Guild products continued to be shipped in packaging and with hang tags that expressly represented that the products were "leather."

23.    At no time did Deer Stags tender any plastic samples of any style to CMRG with detailed descriptions of materials and/or materials changes for approval, to put CMRG on notice of any materials change, as is industry custom and practice.

24.    To the contrary, in or about June 2006, Deer Stags confirmed in writing to CMRG's shoe buyers in Massachusetts that certain advertising copy that had been prepared for purposes of catalog and merchandise web site advertising correctly described that Deer Stags' products were made with "Genuine leather uppers."

25.    In sum, starting in early 2006, on information and belief, Deer Stags had effected a bait and switch. While prices, packaging, and other indications suggested no change in the quality or material in the products, Deer Stags was now charging prices for leather shoes but delivering plastic shoes, and pocketing the differences in cost.

26.    Deer Stags knew or should have known that the value of the five styles of Chinese made shoes being delivered to CMRG was substantially less than CMRG was led to believe.

27.    Deer Stags knew or should have known that CMRG continued to believe that it was ordering and receiving an all "genuine leather" product in all such five styles.

28.    And, Deer Stags knew or should have known that it was engaging in an unfair and deceptive campaign to mislead CMRG in the process.

29.    Unaware, Casual Male continued to sell all such products at their stores, through its merchandise website and through its catalog, as "genuine leather," described as such, as it always had been. At all times, CMRG was in fact under the impression that it was getting and selling to its customers "genuine leather" – not plastic – shoes.

30.    As noted above, to protect its brand and retail reputation, CMRG would not have purchased or sold plastic shoes in this category, particularly if characterized as "genuine leather."

## Casual Male Catches Deer Stags in the Lie

31.    In or about February 2007, CMRG first started having suspicions that certain styles of shoes being delivered by Deer Stags may be in fact adulterated.

32.    In response, CMRG summoned Deer Stags principal Steve Muskat to a meeting at its offices in Canton, Massachusetts. At that meeting, CMRG shoe buyers laid out samples of all seventeen Deer Stags styles on a table, and asked Muskat point

blank: which ones, if any, contain plastic. In response, Muskat admitted that one style (Sanderson) contained plastic.

33.    Not satisfied, CMRG thereafter sent production units in a variety of styles of shoes being supplied by Deer Stags to a laboratory for materials testing. To CMRG's shock and dismay, five styles – not one – came back testing positive for plastic uppers.

34.    CMRG immediately put Deer Stags on vendor hold, put Deer Stags on notice of its objections regarding all previously supplied styles that tested positive for the presence of plastic and attempted to return all inventory in the five styles that now tested positive for the presence of plastic. Deer Stags refused all such efforts.

35.    Shortly thereafter, CMRG (i) put a "stop shop" order on all catalog and web transactions to prevent any customers from purchasing any of the disputed styles, (ii) cancelled all prospective orders to Deer Stags for all products, (iii) modified product packaging to eliminate all references to "leather" or "genuine leather," (iv) changed all Casual Male catalog and internet copy accordingly for the disputed five styles, and (v) started selling all Deer Stag styles at a 50% mark down in order to eliminate Deer Stag products from inventory as soon as possible.

36.    Casual Male sold substantial amounts of the disputed product at full price before it learned these products were adulterated, and has been able to sell some of the disputed products at 50% markdown, but many of the plastic units are still in inventory. As a result, CMRG has been substantially damaged by Deer Stag's outrageous and wrongful conduct, as follows:

### *First Setoff/Counterclaim*
**(Breach of Express Warranty)**

37.    CMRG repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully below.

38.    As set forth above, during at least 2006 and 2007, Deer Stags sold and delivered to CMRG a large number of units of the Guild, Paolo, Suitor, Sanderson and Laval styles of dress and casual shoes (the "Disputed Styles"), for which CMRG paid in full, in the belief that it was in fact taking delivery of genuine leather products.

39.    As detailed above, at all times, and at the time of each purchaser order, and as a part thereof, and as an inducement to CMRG to purchase the Disputed Styles, Deer Stags consistently warranted to CMRG that the Disputed Styles in fact were made with genuine leather uppers.

40.    CMRG purchased the Disputed Styles in reliance on the foregoing warranty.

41.    The warranty was untrue, in that the Disputed Styles were made with uppers in fact made out of an inferior, plastic material.

42.    CMRG promptly and duly put Deer Stags on notice of the falsity of the warranty as soon as it had knowledge thereof.

43.    The Disputed Styles were at the time of delivery to CMRG of a value to be determined at trial, but which is not more than $8.00 to $14.00 per unit. Had they been delivered to CMRG as warranted, the Disputed Styles would have had a value of $21.00 to $26.50 per unit, depending on the style.

44.     By reason of the foregoing, CMRG has been damaged in an amount to be determined at trial, but which shall not be less than $500,000.00.

### *Second Setoff/Counterclaim*
### (Breach of Implied Warranty of Merchantability
### and/or Fitness for a Particular Purpose*)*

45.     CMRG repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully below.

46.     At all relevant times, Deer Stags was engaged in the business of manufacturing, selling and distributing footwear products to wholesalers and other institutional customers.

47.     As set forth above, during the period from 2002 through early 2007, CMRG purchased from Deer Stags substantial quantities of the Disputed Styles, which Deer Stags warranted and represented were merchantable as genuine leather footwear in the dress and casual category, for which CMRG paid in full upon the assumption that it was in fact taking delivery of genuine leather products.

48.     CMRG purchased all such products for resale through Casual Males' retail outlets, catalogs and internet merchandise website as genuine leather products, which was obvious and well-known to Deer Stags generally and at the time of each purchase order, delivery and invoice.

49.     CMRG ordered and expected genuine leather products because footwear made with genuine leather uppers are more reliable, durable and appealing to customers than polyurethane or other synthetic footwear products.

50.     On information and belief, none of the Disputed Styles delivered after early 2006 (and possibly earlier) were in fact genuine leather, but rather were made

with "polynap," or a polyurethane or plastic material intentionally manufactured to look like leather.

51.    CMRG consistently relied on Deer Stags' presentations and representations regarding the quality of the products being delivered, as only Deer Stags had access to the true nature of materials used in all such products and "polynap" shoes often pass for leather without materials testing or other expert analysis.

52.    As a result, CMRG has been substantially damaged by Deer Stags' breaches of implied warranty, and suffered damages as outlined above.

53.    CMRG promptly and duly put Deer Stags on notice of the falsity of said warranty as soon as it had knowledge thereof.

### *Third Setoff/Counterclaim*
### (Breach of Implied Duty of Good Faith and Fair Dealing)

54.    CMRG repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully below.

55.    As set forth above, Deer Stags breached its duty of good faith and fair dealing under the contracts for the purchase and sale of the Disputed Styles by altering the material without notice to CMRG and attempting to pass off plastic shoes as leather. As a result of Deer Stags' wrongdoing and deceit, CMRG has been forced to overpay for product and to sell other product at a material loss.

### *Fourth Setoff/Counterclaim*
### (Breach of Contract)

56.    CMRG repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully below.

57.    As set forth above, CMRG and Deer Stags entered into a series of contracts for the purchase and delivery of the Disputed Styles.

58.    As further set forth above, Deer Stags breached those contracts by delivering non-conforming shoes, made out of plastic uppers instead of "genuine leather" uppers.

59.    Deer Stags' breaches of contract have caused CMRG damages in a variety of ways to be proven at trial, but which shall include at least the following: (i) CMRG's costs of good sold for its purchases of the Disputed Styles was substantially inflated and misrepresented, (ii) CMRG was forced to sell various Deer Stag products at a substantial loss, and (iii) CMRG incurred various other costs as a result of Deer Stag's wrongful conduct in breach of contract.

60.    As a result of the foregoing, CMRG has been damaged in an amount to be established at trial, but which shall not be less than $500,000.00.

### Fifth Setoff/Counterclaim
### (Unjust Enrichment)

61.    CMRG repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully below.

62.    As set forth above, Deer Stags has been unjust enriched at CMRG's expense by falsely selling the Disputed Styles as and at the cost of leather.

### Sixth Setoff/Counterclaim
### (Deceptive Trade Practices)

63.    CMRG repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully below.

64.     Deer Stags is a person engaged in the conduct of trade or commerce.

65.     CMRG is a person engaged in the conduct of trade or commerce in the Commonwealth of Massachusetts.

66.     Deer Stag's deliberate and knowing attempt to pass off polyurethane products in bulk as leather, as outlined above, constitutes unfair and deceptive trade practices as prohibited by Massachusetts General Laws Chapter 93A, Section 11.

67.     Such unfair and deceptive trade practices occurred primarily and substantially in trade or commerce in Massachusetts, were received and acted upon in primarily and substantially in Massachusetts and caused injury primarily and substantially in Massachusetts.

68.     Plaintiff has suffered injury due to the unfair and deceptive trade practices of Deer Stags.

69.     Deer Stags willfully and knowingly violated Chapter 93A.

70.     Accordingly, Deer Stags is liable to CMRG for all actual damages suffered therefrom, attorneys fees and costs and up to treble damages pursuant to Chapter 93A.

### Seventh Setoff/Counterclaim
### (Fraud)

71.     CMRG repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully below.

22

72.     As set forth above, Deer Stags consistently misrepresented and/or failed to disclose to CMRG that it was selling and delivering the Disputed Styles to CMRG without "genuine leather uppers" and with inferior, plastic materials.

73.     The foregoing misrepresentations and/or omissions were material facts relevant to CMRG's purchases.

74.     On information and belief, Deer Stags' actions in this regard were false and misleading and were made with the intent to deceive CMRG regarding the materials used in the Disputed Styles.

75.     Based on Deer Stags wrongful conduct and deceit, CMRG reasonably relied on the representations and/or omissions to its detriment.

76.     Deer Stag's conduct in this regard has caused CMRG direct and proximate damages in amounts to be determined at trial, but which shall not be less than $500,000.00.

77.     In addition, given the serious and deceitful conduct as detailed above, CMRG respectfully prays for a further award of punitive damages in connection with this counterclaim for relief.

### *Eighth Setoff/Counterclaim*
### (Negligent Misrepresentation)

78.     CMRG repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully below.

79.     Deer Stags was in a superior position of knowledge regarding the nature of the materials used in the production of the Disputed Styles, which was not

immediately apparent to or discoverable by CMRG, and Deer Stags was able to use its superior knowledge of such facts to mislead CMRG.

80.    As a result, at all relevant times, each Deer Stags had a special relationship with CMRG under which it had a duty to provide true, correct and fair information regarding the quality of the Disputed Styles.

81.    As set forth above, Deer Stags consistently misrepresented and/or failed to disclose to CMRG that it was selling and delivering the Disputed Styles to CMRG without "genuine leather uppers" and with inferior, plastic materials.

82.    The foregoing misrepresentations and/or omissions were material facts relevant to CMRG's purchases.

83.    On information and belief, Deer Stags was reckless and/or deliberately and intentionally misled CMRG regarding the materials used in the Disputed Styles in order to increase its profit margin on all such sales.

84.    Based on Deer Stags wrongful conduct and deceit, CMRG reasonably relied on the representations and/or omissions to its detriment.

85.    As a result of the foregoing, CMRG has been damaged by the foregoing pattern of negligent misrepresentation in amounts to be determined at trial, but which shall not be less than $500,000.00.

### *Ninth Setoff/Counterclaim*
### (Declaratory Judgment)

86.    CMRG repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully below.

87.     If and to the extent any third party seeks redress from CMRG for the purchase of any of the Disputed Styles, CMRG is entitled to indemnification from Deer Stags for any and all costs and expenses incurred as a result.

**WHEREFORE**, defendants s/h/a Casual Male Retail Group, Inc., CMRG Apparel, LLC, Designs Apparel, Inc., Casual Male RBT, LLC, Casual Male RBT (U.K.), LLC, Casual Male Canada Inc., Casual Male Store, LLC, Casual Mail Retail Store, LLC and Casual Male Direct, LLC respectfully request that this Court enter judgment against the plaintiff Deer Stags, Inc. dismissing all claims for relief alleged in the Complaint and awarding them their attorneys' fees and costs incurred in defending this action. In addition, counterclaim-plaintiff CMRG further respectfully requests judgment in its favor on its counterclaims in the amount of at least $500,000.00, plus pre and post judgment interest and attorneys fees, and any such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        June 10, 2008


**TRACHTENBERG RODES & FRIEDBERG** LLP

By: _____
       Barry J. Friedberg (BF 7337)

545 Fifth Avenue
New York, New York 10017
(212) 972-2929

*Attorneys for Defendants*